UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TAMMY LAVALLEY, on behalf of A.W.,

        Plaintiff,

        V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

        Defendant.
_____

**REPORT AND
RECOMMENDATION**

12-CV-771
(MAD/VEB)

# I. INTRODUCTION

In July of 2009, Plaintiff Tammy LaValley, the legal guardian of A.W. ("Claimant"),[2] filed an application on Claimant's behalf for Supplemental Security Income ("SSI") benefits under the Social Security Act, alleging disability due to speech and language delays. The Commissioner of Social Security denied the application.

Plaintiff, through her attorneys, the Legal Aid Society of Northeastern New York, Victoria M. Esposito, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 22, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this case pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure .

[2]A.W. is a minor child. Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil Procedure, he will be referred to as "Claimant" in this Report and Recommendation.

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff is the legal guardian of Claimant, a minor child. On July 17, 2009, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning December 1, 2007. (T at 113).[3] The application was denied initially and Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). On March 10, 2011, a hearing was held in Canton, New York before ALJ Robert Gale. (T at 40). Claimant and Plaintiff appeared at the hearing with an attorney and testified. (T at 43-62).

On July 14, 2011, ALJ Gale issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act. (T at 20-39). The ALJ's decision became the Commissioner's final decision on April 30, 2012, when the Social Security Appeals Council denied Plaintiff's request for review. (T at 1-5).

On May 10, 2012, Plaintiff, acting on Claimant's behalf and with counsel, timely commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). The Commissioner interposed an Answer on August 24, 2012. (Docket No. 9). Plaintiff filed a supporting Brief on October 9, 2012. (Docket No. 12). The Commissioner filed a Brief in opposition on December 19, 2012. (Docket No. 15).

---

[3]Citations to "T" refer to the Administrative Transcript. (Docket No. 10)

Pursuant to General Order No. 18, as issued by the Chief District Judge of the Northern District of New York, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons set forth below, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for the calculation of benefits.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20

C.F.R. § 416.924; <u>Kittles v. Barnhart</u>, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); <u>Ramos v. Barnhart</u>, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); <u>Kittles</u>, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); <u>Kittles</u>, 245 F.Supp.2d at 488; <u>Ramos</u>, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). <u>Id</u>. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); <u>Kittles</u>, 245 F.Supp.2d at 488; <u>Ramos</u>, 2003 WL 21032012, at *7. If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); <u>Ramos</u>, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); <u>Ramos</u>,

5

2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ noted that Claimant was born on April 5, 2006, and was therefore an "older infant," as defined under the applicable Regulations, on July 17, 2009 (the date the application for benefits was filed) and a "preschooler," on July 14, 2011 (the date of the ALJ's decision). (T at 26).   The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision. (T at 26). He further determined that Claimant had the following impairment: speech and language delays, which the ALJ recognized as a "severe" impairment under the Social Security Act. (T at 26-27).

The ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix I (the "Listings").   (T at 28).   The ALJ also concluded that Claimant did not have an impairment or combination of impairments that functionally equaled one or more of the impairments set forth in the Listings. (T at 28-35).

As such, the ALJ found that Claimant had not been disabled, as defined under the Social Security Act, from the date the application for benefits was filed to the date of the ALJ's decision.   (T at 36).   As noted above, the ALJ's decision became the Commissioner's final decision on April 30, 2012, when the Appeals Council denied Plaintiff's request for review.   (T at 1-5).

### 2.    Functional Equivalence Analysis

As outlined above, if a child claimant's impairments do not meet or medically equal one of the impairments set forth in the Listings, the Commissioner must determine whether

the impairment or combination of impairments are functionally equivalent to a Listing.[4] Analysis of functionality is informed by consideration of how a claimant functions in six (6) main areas, which are referred to as "domains." 20 C.F.R. § 416.926a(b)(1).

In the present case, the ALJ determined that Claimant had: (1) a less than marked limitation in acquiring and using information; (2) no limitation with regard to attending to and completing tasks; (3) marked limitation with respect to interacting with and relating to others; (4) no limitation in moving about and manipulating objects; (5) less than marked limitation in the ability to care for himself; and (6) no limitation with regard to health and physical well-being. (T at 30-35).

Plaintiff argues that the ALJ should have found a marked limitation in the domain of acquiring and using information and an extreme limitation in the domain of interacting and relating to others. This Court will examine both arguments in turn.

### i.    Acquiring and Using Information

The domain of acquiring and using information considers the child's ability to acquire or learn information and how well the child uses the information she has learned. 20 C.F.R. § 416.926a(g). Older infants and toddlers (age 1 to age 3) should be able to learn how objects go together in different ways and that by pretending, their actions can represent reality. They should begin to understand that words represent real objects and should refer to themselves by pointing and eventually by naming. They should form concepts and solve

---

[4]Plaintiff suggests that Claimant's impairment meets the requirements of Listing § 2.09   However, that Listing requires the "inability to produce by any means speech that can be heard, understood, or sustained."  Although Claimant's speech is severely impaired, as discussed herein, he is able to produce some speech.  As such, the ALJ correctly concluded that Claimant's impairment did not satisfy Listing § 2.09.  However, for the reasons outlined above, the ALJ's functional equivalence analysis is not supported by substantial evidence and should be reversed.

simple problems via purposeful experimentation. They should begin to respond to increasingly complex questions and instructions and produce an increasing number of words and grammatically correct simple sentences and questions. 20 C.F.R. § 416.926a(g)(2)(ii).

Preschool children (age 3 to age 6) should begin to learn and use the skills that will help them learn to read and write and do arithmetic. Examples of such skills include: listening to stories, rhyming words, matching letters, counting, sorting shapes, and building with blocks. They should also be learning skills such as painting, coloring, copying shapes, and using scissors. They should be using words to ask questions, give answers, follow directions, describe things, explain what they mean, and tell stories. 20 C.F.R. § 416.926a(g)(2)(iii).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she does not demonstrate understanding of words about space, size, or time; cannot rhyme words or the sounds in words; has difficulty recalling information learned in school the previous day; has difficulty solving mathematical problems; and/or talks in short, simple sentences and his difficulty explaining what he or she means. 20 C.F.R. § 416.926a(g)(3).

In the present case, the ALJ found less than a marked limitation with regard to this domain, concluding that Claimant was "intelligent and normatively able to function academically," as demonstrated by evaluative reports in the record. (T at 31).

The ALJ relied principally upon Claimant's 2009-10 Preschool Individualized Education Program ("IEP"), which indicated that Claimant's cognitive functioning was "in the average range" and that he did not have any needs in that regard. (T at 134). The IEP

was, in turn, based on, *inter alia*, reports provided by a speech-language pathologist and school psychologist.

In February of 2009, Beth Woodward, a speech-language pathologist, evaluated Claimant and reported that he showed strength in naming body parts and clothing items and in understanding concepts of quantity and on/off.  (T at 216).

In March of 2009, Melinda Frazer, a certified school psychologist, evaluated Claimant and reported that his reasoning and academic skills were in the average range, with Claimant showing interest in age-appropriate books. (T at 224).  Claimant's perception and concept skills were likewise found to be average, with Claimant demonstrating the ability to sort by color and shape following demonstrations. (T at 224).

Although these reports provide support for the ALJ's general assessment of Claimant's cognitive abilities, the ALJ's determination with regard to this domain is not supported by substantial evidence and should not be sustained.  In particular, the ALJ did not adequately account for the impact of a speech delay on Claimant's ability to acquire and use information and did not properly address other, important evidence of record, which clearly demonstrated a marked limitation in this domain.

The ALJ acknowledged that Claimant's language delays were a "possible problem" in that they inhibited Claimant from "participating in and completing certain classroom assignments where interaction speech was required." (T at 31).  However, the ALJ then discounted the impact of that "possible problem," suggesting that interactive speech was "not normally a large portion of the classroom instruction in elementary school." (T at 31). The ALJ's assessment of the role played by interactive speech in the elementary classroom is entirely unsupported.  In fact, as outlined above, the central role of speech in acquiring

10

and using information is recognized in the case law and Regulations. The ALJ also improperly viewed this domain largely through the prism of Claimant's cognitive abilities, without considering the impact of Claimant's communication impairments on his ability to acquire and use information.

The ability to use language is of "vital importance" to the domain of acquiring and using information. See F.M. v Astrue, No. 08-CV-4430, 2009 WL 2242134, at *8 (E.D.N.Y. July 27, 2009). The Commissioner's Regulations provide, in pertinent part, that this domain involves "us[ing] use language to think about the world and to understand others and express yourself; e.g., to follow directions, ask for information, or explain something." 20 CFR § 416.926a(g)(1)(ii). Older infants and toddlers are expected to "respond to increasingly complex instructions and questions, and to produce an increasing number of words and grammatically correct simple sentences and questions." 20 CFR § 416.926a(g)(2)(ii). Preschool children should be able to use "words to ask questions, give answers, follow directions, describe things, explain what [they] mean, and tell stories . . . ." 20 CFR § 416.926a(g)(2)(iii).

Because learning and thinking require the ability to communicate, children with impairments affecting communication often have limitations with regard to acquiring and using information. SSR 09-3p; SSR 09-5p; see also Perez v. Astrue, No. 08-CV-02176, 2009 WL 3076259, at *6 (D.Colo. Sept. 23, 2009) ("Given the important role of oral communication in the domains of acquiring and using information and interacting and relating with others, a child with a significant speech impairment may have functional limitations in both domains. The Commissioner's policy interpretations explicitly recognize this possibility."); Kittles ex rel. Lawton v. Barhart, 245 F. Supp. 2d 479, 489 (E.D.N.Y.

11

2003)("[A] child's problems with speech and language now need to be assessed in both the 'acquiring and using information' domain as well as the 'interacting and relating with others' domain, rather than simply in the 'cognition/communication' area of functioning.").

In the present case, the record evidence overwhelming demonstrates that Claimant has at least a marked impairment in this domain. Ms. Woodward, the speech-language pathologist, noted that Claimant used "few expressive word/sounds" during her evaluation. (T at 217). He had difficulty recognizing action pictures, following 2-step unrelated commands and combining 4-5 words in spontaneous speech. (T at 216). Ms. Woodward recommended ninety (90) minutes of speech-language therapy per week, based on a finding that Claimant's overall language and articulation skills were "significantly delayed." (T at 217). The fact that a child receives speech/language therapy is an indication that his or her communication impairment(s) may be interfering with the ability to acquire and use information. SSR 09-3p.

Maureen Lyng, another speech-language pathologist, evaluated Claimant in September of 2009 and noted a "severe delay in the area of speech sound development." (T at 228). Claimant's articulation skills were in the fifth percentile on the Goldman-Fristoe Test of Articulation - 2nd Edition. (T at 227).

Ms. Lyng found Claimant's speech to be "less than 50% intelligible" and opined that his speech skills were "not sufficiently developed to support academic achievement and everyday conversational interaction with peers and adults." (T at 228).

The ALJ referenced Ms. Lyng's assessment (T at 27), but did not explain how he reconciled Ms. Lyng's finding that Claimant's speech skills were "not sufficiently developed to support academic achievement" with his conclusion that Claimant was "normatively able

to function academically . . . ." (T at 31). The ALJ also declared that there was "no indication from either treating or examining medical sources that [Claimant] is substantively precluded from childhood age-appropriate behaviors and experiences." (T at 29). This declaration is plainly contradicted by Ms. Lyng's assessment.

In September of 2009, D. Bostic, a non-examining State Agency review consultant, reviewed Claimant's records and opined that Claimant had a marked limitation with regard to acquiring and using information. (T at 237-38).[5] The ALJ did not even discuss the consultant's report, let alone reconcile it with his conclusion that Claimant had a less than marked limitation in this domain. The Commissioner's Regulations require an ALJ to "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 416.927(f)(2)(ii).

In March of 2011, Mara O'Neill, Claimant's pre-kindergarten teacher, completed a teacher questionnaire. Ms. O'Neill reported that Claimant had "often or marked" difficulty learning new material, recalling previously learned material, and following instructions. (T at 186). She noted that Claimant had "sometimes or moderate" difficulty with regard to demonstrating short-term memory, reading or comprehending written material, comprehending generally, expressing ideas, and demonstrating problem solving skills. (T at 186). Ms. O'Neill opined that Claimant was not functioning appropriately in comparison to unimpaired children of the same age and noted that he "always seems to be one step behind." (T at 186).

The ALJ was quick to dismiss Ms. O'Neill's assessment as inconsistent with the

_____

[5]The consultant did not find marked limitations in any of the other domains.

record and afforded it "no significant weight . . . ." (T at 29). This is remarkable, in that (other than Plaintiff) Ms. O'Neill had, by far, the most direct experience with Claimant and was uniquely qualified to compare his abilities with his typical peers. See Edmond v. Barnhart, No. 04-CV-6515, 2006 WL 2769922, at *10 (W.D.N.Y. Aug. 9, 2006)("The Commissioner encourages the use of non-medical evidence provided by a teacher, who works with a child on a daily basis and observes him in a social setting with peers as well as adults.")(citations omitted).

In contrast, the ALJ appears to have assigned a great deal of weight to his own, limited interaction with Claimant during the hearing. (T at 29)(finding Claimant "generally able to communicate quite appropriately for a young child"). The ALJ did not address the fact that Ms. O'Neill's assessment of Claimant's limitations in this domain was supported by Ms. Lyng's evaluation and the opinion provided by the State Agency review consultant. This was error. See Rossi v. Comm'r of Social Security, No. 10-CV-97, 2010 WL 5313771, at *9 (N.D.N.Y. Dec. 2, 2010)("The ALJ's personal observations are not entitled to substantial deference given his brief interaction with the claimant, the apparent inaccuracy of at least one of his assessments of claimant's abilities, and his failure to explain why he credited his observations over, for example, the inconsistent findings of C.R.'s primary teacher.").

Plaintiff testified that Claimant's speech is intelligible only if he speaks in single words and he must frequently repeat himself several times. (T at 48). She reported that Claimant does not know his colors and refers to himself in the third person. (T at 54). Plaintiff also explained that Claimant can use five or six words in a sentence, but the sentences are not grammatically correct and are very difficult to understand. (T at 55). The

ALJ discussed Plaintiff's testimony (T at 29), but did not make any specific findings regarding the weight he assigned to that testimony or reconcile it with his conclusion that Claimant had a less than marked limitation in this domain. This was also error. See F.S. v. Astrue, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012)("If the child claimant is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent. In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying.")(internal citation omitted).

In sum, the ALJ's finding of less than a marked limitation is not supported by substantial evidence. The ALJ did not adequately evaluate several pieces of material evidence and, indeed, the record (including Plaintiff's testimony, the report provided by Claimant's preschool teacher, the evaluations of the speech-language pathologist, and the assessment of the State Agency review consultant) clearly demonstrates the existence of a marked limitation in the domain of acquiring and using information.

### ii. Interacting and Relating with Others

With regard to the domain of interacting and relating with others, the Commissioner considers the claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

Older infants and toddlers are expected to express emotions and respond to the feelings of others. They should begin initiating and maintaining interactions with adults. In

addition, they show interest in, then play alongside, and then interact with their peers. They should be able to spontaneously communicate wishes or needs, first by gestures, and eventually by usings words clearly enough that people who are familiar with them can understand what they are saying most of the time. 20 C.F.R. § 416.926a(i)(2)(ii).

Preschool children should be able to socialize with children as well as adults. They should begin to develop friendships with peers. They should use words instead of actions, relate to caregivers with increasing independence, and play cooperatively with other children without continual adult supervision. They should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what they are saying most of the time. 20 C.F.R. § 416.926a(i)(2)(ii)(iii).

Examples of limitation of functioning in this domain are: lack of close friends, avoidance or withdrawal, overanxiousness or fear of meeting new people or trying new experiences, difficulty playing games or sports with rules, and difficulty communicating with others, and difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

The ALJ found a marked limitation with respect to Claimant's ability to interact and relate with others. (T at 32-33). He recognized that Claimant's speech was "significantly difficult to understand" and that his interactions with adults and peers were "interfered with." (T at 33). The ALJ appears to have placed great weight on his own ability to "carry on a rudimentary conversation" with Claimant during the hearing (T at 33) and concluded that Claimant's limitation in this domain was marked, but not extreme.

This finding is not supported by substantial evidence. As noted above, Claimant's

16

articulation skills were in the fifth percentile on the Goldman-Fristoe Test of Articulation - 2nd Edition. (T at 227). Ms. Lyng found Claimant's speech to be "less than 50% intelligible" and opined that his speech skills were "not sufficiently developed to support . . . everyday conversational interaction with peers and adults." (T at 228).

Ms. Woodward administered the Preschool Language Scale-4 test and Claimant's expressive communication score was in the 3rd percentile. (T at 216). She opined that Claimant's articulation skills were "significantly delayed." (T at 217).

Ms. O'Neill reported that Claimant had "often or marked" difficulty getting along with other children, sharing or taking turns, following rules, and would demand attention from others. (T at 188). She indicated that he had "sometimes or moderate" difficulty making or keeping friends, being disruptive/talking out of turn, and defying authority/being disobedient." (T at 188).

Plaintiff described Claimant as fighting frequently and aggressive. (T at 48). His speech is intelligible only if he speaks in single words and he must frequently repeat himself several times. (T at 48). Plaintiff testified that Claimant has behavioral problems at school. (T at 51). Plaintiff can only understand him about 40% of the time. (T at 57). She guessed that a person unfamiliar with Claimant would only understand him a quarter of the time. (T at 57).

Although the ALJ referenced all of the foregoing during the course of his decision, he did not reconcile this substantial body of evidence (which indicated a very serious impairment in Claimant's ability to interact with and relate to others) with his finding of a less than extreme limitation in this domain, which appears to have been based primarily on his own observations of Claimant and that fact that the examiners generally described

Claimant as cooperative. This was error.

Accordingly, this Court finds that substantial evidence does not support the ALJ's conclusion that Claimant had a marked, but not extreme, limitation in this domain. However, even if the ALJ was correct in his assessment that Claimant has only a marked limitation in the domain of interacting with and relating to others, a remand would still be required because a finding of disability is warranted when a child claimant has a marked limitation in two domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. In other words, because the ALJ has already concluded that Claimant has, at the very least, a marked limitation with regard to interacting with and relating to others and because the evidence clearly demonstrates a marked limitation as to acquiring and using information, disability has been established even if there was no extreme limitation.

### 3.      Remand for Calculation of Benefits

In this Circuit, a court may remand solely for calculation of benefits when it finds there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

This Court concludes that remand to the Commissioner for further proceedings

would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay. Specifically, this Court finds that the record contains persuasive proof of Claimant's marked limitation of functioning in at least two of the domains identified under 20 C.F.R. § 416.926a. For the reasons set forth above, this Court finds that the evidence compels but one conclusion under the substantial evidence standard, namely, that Claimant also has at least a marked limitation with respect to acquiring and using information and interacting and relating with others. In particular, the reports of the speech-language pathologists, Claimant's classroom teacher, and the testimony of Plaintiff, demonstrated significant problems in these domains of function.

Plaintiff's application for benefits on behalf of Claimant had been pending for nearly three years when this case was filed. Delay "is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation, early intervention services, and personal needs assistance for the child." Nieves ex rel. Nieves v. Barnhart, No. 02 Civ.9207, 2004 WL 2569488, at *10 (S.D.N.Y. November 12, 2004) (citing Maldonado v. Apfel, 55 F.Supp.2d 296, 297-98 (S.D.N.Y.1999)). In fact, "[t]he purpose of providing SSI benefits to children is to assist them while they are children." Molina v. Barnhart, No. 00 CIV. 9522, 2002 WL 377529, at *10 (S.D.N.Y. March 11, 2002).

Accordingly, further delay is not warranted and it is recommended that a remand be ordered solely for the calculation of benefits.


## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's Motion for Judgment

19

on the Pleadings be granted, that the Commissioner's Motion for Judgment on the Pleadings be denied, the decision of the Commissioner be reversed, and this case be remanded to the Commissioner for calculation of benefits.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   April 23, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

April 23, 2013

Victor E. Bianchini
United States Magistrate Judge